**Nos. 5:26-cv-02170-CH and 5:26-cv-02211**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**In re:**

**WHITEHALL TRUST,**
*Debtor.*

**LEHIGH VALLEY 1, LLC**
*Appellee*.

**In re:**

**SAUCON TRUST,**
*Debtor.*

**LEHIGH VALLEY 1, LLC**
*Appellee*.

**APPELLEE LEHIGH VALLEY 1, LLC'S
MOTION TO VACATE OR MODIFY STAY PENDING APPEAL**

*Appeal from the Order of the United States Bankruptcy Court for the
Eastern District of Pennsylvania Granting Lender's Motion to Dismiss
the Trust Debtors' Bankruptcy Cases, No. 25-15241 (PMM)*

| | |
|---|---|
| Matthew A. Hamermesh | BERGER LAW GROUP, P.C. |
| Sara E. Smith | Phillip D. Berger |
| HANGLEY ARONCHICK SEGAL | 919 Conestoga Road, Building |
| PUDLIN & SCHILLER | 3, Suite 114 |
| One Logan Square, 27th Floor | Bryn Mawr, PA 19010 |
| Philadelphia, PA 19103 | (610) 668-0800 |
| (215) 568-6200 | Berger@BergerLawPC.com |

*Counsel for Appellant Secured Creditor
Lehigh Valley 1*

**TABLE OF CONTENTS**

I.    Introduction ..................................................................................1

II.   Background ................................................................................. 3

    A.    The Loans and Defaults................................................... 3

    B.    The Foreclosure Actions.................................................. 5

    C.    Lender's Motion to Dismiss ........................................... 5

    D.    Trust Debtors' Motion for Stay Pending Appeal.........................7

III.  Argument .................................................................................... 9

    A.    Legal Standard............................................................... 9

    B.    Likelihood of Success on Appeal....................................10

    C.    Irreparable Harm to the Trust Debtors ...................................15

    D.    Harm to Third Parties from the Stay .........................................17

    E.    Public Interest ................................................................ 20

    F.    Bond Amount .................................................................. 20

IV.   Conclusion.................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acierno v. New Castle County,*
    40 F.3d 645 (3d Cir. 1994)........................................................ 15, 16

*In re Adelphia Communications Corp.,*
    361 B.R. 337 (S.D.N.Y. 2007) ........................................................ 20

*In re Blanche Zwerdling Revocable Living Trust,*
    531 B.R. 537 (Bankr. D.N.J. 2015)........................................................ 12

*In re Dille Family Trust,*
    598 B.R. 179 (Bankr. W.D. Pa. 2019) ................................................ 11, 12

*In re Eagle Trust,*
    Civ. A. No. 98-2531, 97-23298, 1998 WL 635845
    (E.D. Pa. Sept. 16, 2998)........................................................ 11, 12

*GBForefront, L.P. v Forefront Management Group, LLC,*
    888 F.3d 29 (3d Cir. 2018) ........................................................ 12

*In re Joobeen,*
    385 B.R. 599 (E.D. Pa. 2008)........................................................ 6, 11, 12

*In re Kenneth Allen Knight Trust,*
    303 F.3d 671 (6th Cir. 2002) ........................................................ 12

*Little Four Oil & Gas Co. v. Lewellyn,*
    35 F.2d 149 (3d Cir. 1929) ........................................................ 12

*Macchione v. Coordinator Administrator in Washington, D.C.,*
    591 F. App'x 48 (3d Cir. 2014)........................................................ 15

*Morrissey v. Commissioner of Internal Revenue,*
    296 U.S. 344 (1935) ........................................................ 12

*Nken v. Holder,*
    556 U.S. 418 (2009)........................................................ 9

*In re Revel AC, Inc.*,
   802 F.3d 558 (3d Cir. 2015) ........................................................... 9, 10, 15

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
   927 F.3d 763 (3d Cir. 2019) ................................................................9, 10

*In re Secured Equipment Trust of Eastern Air Lines, Inc.*,
   38 F.3d 86 (2d Cir. 1994) ........................................................................12

*In re Whitehall Trust*,
   No. 25-15241 (PMM) (Bankr. E.D. Pa. 2025) .......................................... 3

## Statutes

11 U.S.C. § 101 ................................................................................................ 6

11 U.S.C. § 109................................................................................................1, 6

15 Pa.C.S. § 9501................................................................................................6, 13

Appellee Lehigh Valley 1, LLC (the "Lender") respectfully moves for an order vacating the stay pending appeal entered by the Bankruptcy Court on April 2, 2026, or, in the alternative, modifying that stay to require the Trust Debtors[1] post a bond or other security sufficient to protect Lender's collateral during the pendency of these appeals.

## I.   INTRODUCTION

On March 19, 2026, the Bankruptcy Court entered an order dismissing the bankruptcy cases of Saucon Valley Trust and Whitehall Trust (collectively, the "Trust Debtors") because they are not business trusts and therefore are not eligible to be debtors under Section 109 of the Bankruptcy Code. (ECF 264, No. 25-15241, Exhibit A; Mem. Op., ECF 263, No. 25-15241, Exhibit B). On April 2, 2026, however, the Bankruptcy Court stayed that dismissal order while the Trust Debtors pursue these appeals.

The bankruptcy court's granting of a stay was an abuse of discretion. The Trust Debtors failed to demonstrate the two most important elements necessary for a stay: that they will likely succeed in these appeals – they will not – and that they will suffer immediate and irreparable harm.

---

[1] The Debtors involved in these appeals are Whitehall Trust and Saucon Valley Trust (collectively, the "Trust Debtors"). Two related companies, Whitehall Manor, Inc. and Saucon Valley Manor, Inc. (collectively, the "Manor Debtors"; collectively, with the Trusts, the "Appellants" or "Debtors"), are also debtors in bankruptcy.

While there is some question how precisely to define the term "business trust" in the Bankruptcy Code, under any definition the Trust Debtors fail. They are family or living trusts designed to preserve the real-estate assets they hold for the benefit of the Atiyeh family. Likewise, the Trust Debtors will suffer no immediate harm as they will continue to maintain ownership of the properties throughout the pendency of the mortgage foreclosure proceedings. The only harm the Trust Debtors face is their potential loss of their real estate at some future time after a judgment is actually entered, and the properties are actually scheduled for a Marshal's sale. This scenario is anything but imminent and immediate.

Conversely, the evidence presented by Lender demonstrates that it is the Lender who faces irreparable harm if a stay is granted because the values of the Trust Debtors' properties are diminishing under the Debtors' control. Further, due to the Debtors' problems in operating the personal care homes, the public interest also favors vacating any stay.

Accordingly, Lender seeks an order either (1) vacating the stay, or (2) making the stay conditional on the Trust Debtors' posting of a bond or other security in an amount sufficient to protect Lender's collateral during the pendency of these appeals.

## II.   BACKGROUND

These appeals arise from bankruptcy cases filed by the Debtors on December 26, 2025. *See In re Whitehall Trust*, No. 25-15241 (PMM) (Bankr. E.D. Pa. 2025) (jointly administered). Lender is a secured creditor of all of the Debtors with liens on their real properties and other collateral. The bankruptcy cases were filed after Lender commenced foreclosure actions against the Trust Debtors for their failures to make any payments on their mortgages and loans for over 5 years. *See* No. 5:24-cv-2627 (E.D. Pa. 2024); No. 5:24-cv-2709 (E.D. Pa. 2024) (collectively, the "Foreclosure Actions").

### A.   The Loans and Defaults

In 2012, M&T Realty Capital Corporation ("M&T") provided a loan to Whitehall Trust, secured by a mortgage on the real property located at 1177 6th Street, Whitehall, Pennsylvania. M&T also provided a loan to Saucon Trust, secured by a mortgage on the real property located at 1050 Main Street, Unit #1, Hellertown, Pennsylvania. The loans were insured by the U.S. Department of Housing and Urban Development ("HUD").

The Manor Debtors lease these real properties from the Trust Debtors and operate personal care homes on them. Pursuant to the controlling lease agreements between the Trust Debtors and the Manor Debtors, the Manor Debtors owed the following rent amounts:

3

| Lease | Monthly Rent | Annual Rent |
|---|---|---|
| Whitehall Manor from Whitehall Trust | $139,000 | $1,668,000 |
| Saucon Manor from Saucon Trust | $142,118 | $1,705,421 |
| **COMBINED TOTAL** | **$281,118** | **$3,373,421** |

*See* Whitehall Lease (Exhibit C); Saucon Lease (Exhibit D).

After the Trust Debtors' payment defaults – neither has made a single voluntary mortgage payment on their loans since February 2021 – the notes and mortgages were assigned by M&T to HUD effective November 16, 2022. HUD then held a publicly advertised loan sale, at which Windstream Capital LLC was the authorized and winning bidder on these two loans. HUD then assigned both notes, both mortgages, all security agreements, and all related loan documents to Windstream Capital LLC on September 20, 2023. Windstream Capital subsequently assigned the loan documents to Lender on May 15, 2024. Lender now holds mortgages on the Trust Debtors' real property, a security interest in all of the Debtors' assets, and a security interest in and the right to collect rents directly from all the residents living at the personal care homes operated by the Manor Debtors.

Additionally, as a result of Debtors' failure to pay real estate taxes, the Trust Debtors' properties were subject to significant tax and municipal liens which caused the properties to be listed for tax sale. The Trust Debtors

4

(through the Manor Debtors) entered into a tax repayment plan. However, the Trust Debtors still owe $606,969.09 in delinquent real estate taxes. *See* Whitehall Trust, Claim No. 1 filed Feb. 3, 2026 by Borough of Hellertown for $94,600.00 (No. 25-15241) (Exhibit E); Whitehall Trust, Claim No. 6, filed Feb. 23, 2026 by Whitehall-Coplay School District for $257,618.54 (No. 25-15241) (Exhibit F); Saucon Trust, Claim No. 3 filed Feb. 23, 2026 by Saucon Valley School District for $220,654.35 (No. 25-15243) (Exhibit G); Whitehall Trust, Claim No. 5 filed Feb. 23, 2026 by Whitehall Township for $34,096.20 (No. 25-15241) (Exhibit H).

### B.    The Foreclosure Actions

Due to the Trust Debtors' payment defaults, Lender filed the Foreclosure Actions against each of the Trust Debtors in June 2024. This Court appointed a Receiver for both properties for the benefit of the Lender. On December 19, 2025, the District Court entered an Order, *inter alia,* granting Receiver's Motion for Sanctions and ordering the Trust Debtors to pay the Receiver a sanctions award by December 29, 2025 (Exhibit I). The Debtors each filed a petition for bankruptcy on December 26, 2025, three days before the sanctions award was due.

### C.    Lender's Motion to Dismiss

On January 14, 2026, Lender filed a motion to dismiss the bankruptcy cases of the Trust Debtors because they are trusts not eligible to be debtors

under Section 109 of the Bankruptcy Code, 11 U.S.C. § 109. (ECF 102, No. 25-15241, Exhibit J). Lender argued that "[a]s a general matter, trusts are not eligible for bankruptcy relief." *In re Joobeen*, 385 B.R. 599, 613 (E.D. Pa. 2008). In particular, "real property trusts cannot be debtors under the Bankruptcy Code...." *Id.* at 614. Rather, only "business trusts" are eligible to be debtors under the Bankruptcy Code. *See* 11 U.S.C. § 101(9)(A)(v) & (41), 109(b) & (d). Lender argued that the Trust Debtors are not business trusts because they do not have any of the characteristics of a business trust. *See* Ex. J. For example:

- Neither of the Trust Debtors was formed as a business trust under the Pennsylvania statute governing business trusts, 15 Pa. C.S. § 9501 *et seq.*

- Neither of the Trust Debtors was formed for the primary purpose of transacting business or commercial activity, as opposed to preserving assets.

- Each Trust was formed by Mr. Atiyeh alone, not by a group of investors who contributed capital to the enterprise with the expectation of receiving a return on their investment.

- The beneficial interests of each of the Trust Debtors – held by Mr. Atiyeh and his family – are not transferable.

*See id.* Because the Trust Debtors are not business trusts, Lender argued that they are not eligible to be debtors and their bankruptcy cases should be dismissed. *See id.*

6

The Bankruptcy Court agreed, and granted Lender's motion to dismiss the Trust Debtors' bankruptcy cases. Specifically, the court found: (1) the Trust Debtors "neglected to register as business trusts pursuant to the applicable Pennsylvania statute"; (2) "[b]eneficial interests in the Trusts are not transferable"; (3) "[t]he Trusts are not meant to exist in perpetuity"; (4) the Trusts "were not formed by investors"; and (5) "the Trusts were not created and maintained for business purposes." Ex. B at 29; *see also* Ex. A at ¶ 1. As a result, the Court concluded "[t]he Trusts are not 'business trusts within the meaning of the Bankruptcy Code." Ex. B at 29; *see also* Ex. A at ¶ 1.

### D.    Trust Debtors' Motion for Stay Pending Appeal

On March 23, 2026, the Debtors filed an Emergency Motion for Stay (ECF 30, No. 25-15245) (Exhibit K), and on March 31, 2026, filed their Memorandum of Law in Support (ECF 55, No. 25-15245) (Exhibit L). Debtors argued that without a stay, the Foreclosure Actions will be reinstated against the Trust Debtors, which will "ha[ve] a direct impact on the Manor Debtors' estates." Ex. K at ¶ 5. Debtors argued that: (1) the Debtors have a likelihood of success on appeal because of the possibility that the Third Circuit will adopt a different approach to defining what constitutes a business trust; (2) the Debtors will suffer irreparable harm absent a stay

because of the possibility that the Trust Debtors will lose their real estate through a foreclosure sale; (3) the balance of harms favors a stay pending appeal because the evidence will purportedly show that Lender will not be harmed by the stay; and (4) the public interest favors a stay to maintain the *status quo*. Ex. L at 2-9.

Following an evidentiary hearing, the Bankruptcy Court granted the Debtors' motion for a stay pending appeal (ECF 274, No. 25-15241, Exhibit M). The Court found: (1) "the debtors have a reasonable chance of success on appeal given the wide array of decisions on the issue of what constitutes a business trust and whether the debtors fit within that definition for eligibility purposes," Apr. 2, 2026 Tr., at 3:4-8 (Exhibit N); (2) "the debtors will, in fact, suffer irreparable harm" because "[t]he harm of losing the real estate is substantial and cannot be remedied by monetary damages," *Id.* at 3:9-14; (3) "the harm to the debtor outweighs the harm to Lehigh Valley caused by an imposition of the stay," *Id.* at 5:11-13; and (4) the public interest is "a neutral factor, not weighing in favor of either party." *Id.* at 6:1-2. The Court declined to require that Debtors post a bond to secure the value of Lender's collateral and protect against potential diminution during the appeals. *See id.* at 6:9-7:9.

8

## III.   ARGUMENT

The bankruptcy court abused its discretion in granting a stay pending appeal. Lender respectfully requests that this Court either vacate the stay or modify it to require the Trust Debtors to post a bond or other security sufficient to protect Lender against the risks created by the stay.

### A.   Legal Standard

An appeal from a court's grant or denial of a stay is reviewed "for [an] abuse of discretion." *In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015). A court's decision on the likelihood of success on the merits is reviewed *de novo* because this "involves a purely legal determination." *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019).

In considering whether to grant a stay pending appeal, courts must consider four factors: "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *Revel*, 802 F.3d at 565. The first two factors – likelihood of success and irreparable harm – are "the most critical". *Id.* at 568 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

"Upon satisfaction of the first two factors, courts assess the harm to the opposing parties and weigh the public interest." *S.S. Body Armor*, 927 F.3d

9

at 772. Specifically, courts balance the irreparable harm to the party seeking the stay against the "likely harm to stay opponents if the stay is granted." *Id.* Courts then consider whether a stay is in the public interest. *See id.* If the party seeking a stay does not make the requisite showing on the first two factors, the "inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *Revel*, 802 F.3d at 571 (citation omitted).

### B.    Likelihood of Success on Appeal

"[A] strong showing of the likelihood of success exists if there is a reasonable chance, or probability, of winning." *S.S. Body Armor*, 927 F.3d at 772 (quotation omitted). "Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Revel*, 802 F.3d at 569 (quotations and citations omitted).

Here, the bankruptcy court found "that the debtors have a reasonable chance of success on appeal given the wide array of decisions on the issue of what constitutes a business trust and whether the debtors here fit within that definition for eligibility purposes." Ex. N at 3:4-8. This finding cannot stand.

The bankruptcy court was correct that various courts have stated the test for whether a trust is a "business trust" in different ways. *See* Ex. B. But

10

these tests generally focus on the same or similar sets of characteristics for a business trust. Critically, no matter which version is applied, the Trust Debtors do not qualify as a business trust. Even if the appellate court were to state the test differently, Debtors are not likely to be successful in these appeals. *See* Ex. N at 3:4-8.

In its Motion to Dismiss, Lender relied on tests articulated by this Court in *In re Joobeen*, 385 B.R. 599 (E.D. Pa. 2008), and by the Bankruptcy Court in the Western District of Pennsylvania in *In re Dille Family Trust*, 598 B.R. 179 (Bankr. W.D. Pa. 2019). *See* Ex. J at ¶¶ 46-70. Lender demonstrated that under either test, the Trust Debtors are not business trusts. *See id.*

> The elements of a business trust under this Court's test are:
>
> > (1) the trust was formed for the primary purpose of transacting business or commercial activity, as opposed to preserving assets;
> >
> > (2) the trust was formed by a group of investors who contribute capital to the enterprise with the expectation of receiving a return on their investment;
> >
> > (3) the trust was created in compliance with state law; and
> >
> > (4) the beneficial interests of the trust must be freely transferable.

*Joobeen*, 385 B.R. at 613 (quoting *In re Eagle Trust*, Civ. A. No. 98-2531, 97-23298, 1998 WL 635845, at *4 (E.D. Pa. Sept. 16, 2998)). Similarly, the

11

bankruptcy court in Pittsburgh recognized that whether a trust is a business trust turns on two elements: (1) "whether the trust [] was created for the purpose of transacting business for a profit (as opposed to merely preserving a res for beneficiaries)"; and (2) "whether the trust [] has all of the indicia of a corporate entity." *Dille Trust*, 598 B.R. at 194.

While the precise language of these tests may vary, they look to the same elements to determine whether a trust is a business trust: (1) whether the trust was formed to carry on a for-profit business or for the purpose of preserving property for the benefit of the trust's beneficiaries, and (2) whether the trust has the fundamental traits of a corporation. *See, e.g.*, *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 680 (6th Cir. 2002); *In re Secured Equip. Trust of E. Air Lines, Inc.*, 38 F.3d 86, 89, 90 (2d Cir. 1994); *Little Four Oil & Gas Co. v. Lewellyn*, 35 F.2d 149, 150 (3d Cir. 1929); *Joobeen*, 385 B.R. at 613; *Eagle Trust*, 1998 WL 635845, at *4; *Dille Family Trust*, 598 B.R. 179; *In re Blanche Zwerdling Revocable Living Tr.*, 531 B.R. 537, 545 (Bankr. D.N.J. 2015); *see also Morrissey v. Comm'r of Internal Revenue*, 296 U.S. 344, 359 (1935) (defining "business trust" for purposes of the Internal Revenue Code); *GBForefront, L.P. v Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 40 (3d Cir. 2018) (defining "business trust" for purposes of diversity jurisdiction).

12

In granting Lender's Motion to Dismiss, the Bankruptcy Court set forth the specifics of these tests before synthesizing them into the following formulation:

> Among the most important attributes of a business trust are: (1) existence as such under applicable state law; (2) transferable, beneficial interests; (3) perpetual existence; (4) formation by investors; and (5) creation *and* maintenance for the purpose of conducting business. Although these criteria are not exhaustive, failure to satisfy the last factor is dispositive.

Ex. B at 18 (emphasis in original). Thus, while there may be a "wide array of decisions on the issue of what constitutes a business trust," Ex. N at 3:4-8, that alone is not a sign that the Trust Debtors have any meaningful chance of success on appeal.

Moreover, as the bankruptcy court concluded, the Trust Debtors do not embody the "most important attributes of a business trust" and thus they are ineligible to be debtors in bankruptcy. *See* Ex. B at 18-29. The court found that:

- The Trust Debtors are not business trusts under Pennsylvania law because the deeds of the Trust Debtors neither were filed with the Department of State nor did they state that the Trust Debtors exist subject to the provisions of 15 Pa.C.S. § 9501. *Id.* at 20-21.

- The beneficial interests in the Trust Debtors are not transferable. *Id.* at 21.

13

- The Trust Debtors are not meant to exist in perpetuity as both Trusts "provide for estate succession and intra-family distribution of the res." *Id.* at 22. "[I]t is safe to conclude that the Trusts are family trusts." *Id.* at 23.

- The Trust Debtors were not formed by a group of investors seeking returns on their investments; rather, Atiyeh was the sole settlor and conveyor of assets into the Trust Debtors. *Id.* at 23.

- The Trust Debtors were not created *and* maintained to conduct business. *Id.* at 24. "Business trusts engage in more than the mere collection and distribution of rents. Yet it appears that the sum of the Trust Debtors' 'operational' output was their collection of rental income for distribution to Atiyeh and his secured lenders. Such passivity weighs in favor of dismissal." *Id.* at 25. (citations omitted).

In an attempt to demonstrate their likelihood of success on appeal, the Trust Debtors ignored these findings and argued that "[s]ince other courts have reached different results as to the appropriate standard ... it is certainly possible that the Third Circuit will adopt a different approach." Ex. L at 3. They contend that "[e]ven if the Third Circuit agrees with this Court's definition of a business trust, it may well disagree with how that definition was applied to these facts." *Id.*

But when the bankruptcy court's findings are compared to any set of factors a court has articulated to identify what is a business trust, the Trust Debtors will fail. Regardless of what test is applied, the Trust Debtors are not business trusts and have no meaningful chance of success in these appeals.

14

### C.   Irreparable Harm to the Trust Debtors

For irreparable harm, "the applicant must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay]." *Revel*, 802 F.3d at 569 (citation omitted). "[To] establish irreparable harm, a stay movant must demonstrate an injury that is *neither remote nor speculative, but actual and imminent.*" *Id.* at 571 (citation omitted). "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future." *Macchione v. Coordinator Adm'r in Washington, D.C.*, 591 F. App'x 48, 49-50 (3d Cir. 2014) (citation omitted); *see also Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994) (providing that a stay "may not be used simply to eliminate a possibility of a remote future injury").

The Bankruptcy Court held that "the debtors will, in fact, suffer irreparable harm if the stay is not in place during the pendency of the appeal":

> The harm of losing the real estate is substantial and cannot be remedied by monetary damages. Two personal care homes are being operated in the real estate that is subject to the mortgage foreclosure. Although Lehigh Valley does not yet have a judgment on mortgage foreclosure, the Court finds the risk that the judgment will be entered against debtors and that Lehigh Valley will proceed to the sale of the property is neither remote nor speculative.

Ex. N at 3:10-20. The chance that a foreclosure judgment *may* be entered against the Trust Debtors, and that a Marshal's sale *may then* occur in the

15

future is not irreparable harm. It is not imminent and would only occur in the indefinite future. *See id.*

The Marshal's sale is not imminent, as the mortgage foreclosure action is pending. Lender has not filed motions for summary judgment in the Foreclosure Actions and discovery is still outstanding. Thus the potential harm is remote and speculative.[2] The Trust Debtors will have the opportunity to move for a stay if/when a judgment is actually entered against them. This provides the Trust Debtors the same opportunity to address the harm of losing their real estate when the sale is actual and imminent.

The Trust Debtors could also bid on their properties at a foreclosure sale, providing further protection from any potential harm. That the Trust Debtors' financial situation may not allow them to successfully bid is not irreparable harm. *See Acierno*, 40 F.3d at 653.

The appropriate course of action here is to allow the Foreclosure Actions to proceed. If these appeals remain pending once a judgment is entered in the Foreclosure Actions, the Trust Debtors could seek a stay of that judgment pending the outcome of these appeals. There is simply no

---

[2] Debtors also relied on supposed irreparable harm to the Manor Debtors; that is irrelevant because the question is whether the **appellants** – here the Trust Debtors – will suffer irreparable harm, not whether related parties will suffer harm.

reason to forestall the Foreclosure Actions from proceeding due to a future potential risk of sale.

### D.   Harm to Third Parties from the Stay

Despite evidence to the contrary, the Bankruptcy Court concluded that the only harm Lender will face is financial harm due to the Trust Debtors' continued non-payment of their mortgages during these appeals. *See* Ex. N at 4:19-21. The Court concluded that "there has been no evidence presented on a deterioration of the value of the real estate." *Id.* at 4:21-22. Thus, the court found that the balance of harms weighs in favor of granting the stay.

But the court disregarded the substantial evidence Lender presented during the hearing which demonstrated the diminishing value of the property. For example, Lender introduced Receiver's reports, documenting multiple holes in the ceiling and water damage at the facilities. Receiver's First Report, ECF 79, No. 24-2627 (Exhibit O); Receiver's Fourth Report, ECF 129, No. 24-2627 (Exhibit P). Lender also pointed to Debtors' monthly operating reports, which show the properties were delinquent in their payments to food service vendors. *See* Saucon Valley Monthly Operating Report, ECF 29, No. 25-15245 (Exhibit Q); Whitehall Manor Monthly Operating Report, ECF 28, No. 25-15245 (Exhibit R).

17

Although not before the court at the time of the hearing, the Patient Care Ombudsman ("PCO") has since filed her first report ("PCO Report") demonstrating the diminishing value of the properties. *See* PCO Report, ECF 280, No. 25-15241 (Exhibit S). The PCO observed serious deficiencies impacting residential care and hygiene at both facilities. *See id.* For the Whitehall property, the PCO observed an "ongoing infestation of mice" and issues with the refrigeration of food. *Id.* at 1-2. For the Saucon property, the PCO observed "ongoing concerns regarding kitchen and 2nd floor ceiling leak," lack of cleanliness in the kitchen, unrepaired holes in the ceiling and ceiling leaks, unrepaired heating coil leak, and a need to replace the heating coil. *See id.* at 3-7. Further, the Licensing Bureau actually revoked Saucon Valley Manor's certificate of compliance in light of these violations and issued them a First Provisional license that will expire on September 26, 2026. *See id.* at 8.

Debtors attempt to hand-wave away any other risks the Lender will experience as a result of the stay. For example, and without providing any evidence in support, Debtors contend that "(1) taxes on the properties are being paid; (2) insurance is current on the properties; (3) the properties are being well maintained by the Manors who operate the homes; (4) there is no proof of diminution of value; and (5) adequate protection payments are being

made to protect the Lender against depreciation." Ex. L at 7. Yet, Debtors have failed to explain how the post-petition rent the Manor Debtors owe to the Trust Debtors will be paid (rents on which Lender has a lien) and what will happen if and when occupancy goes down as a result of the Debtors' poor maintenance of the properties. The Manor Debtors' failure to pay rent directly harms Lender because Lender has a lien on the rent, and given Debtors' financial situation, it is unlikely that Debtors will ever be able to pay the rents owed.

The issued stay puts all of the risk of harm on Lender. Debtors have insufficient funds to pay their rent, mortgages, taxes, and vendors that provide services to the residents at the personal care homes. It thus cannot be disputed that Debtors lack the financial means to repair their properties and prevent further diminution in the value of their properties during the pendency of these appeals. The risk then falls on Lender that the properties will be diminished in value as a result of the Debtors' inability to maintain the facilities. Moreover, Lender will be deprived of rents it is owed because the Manor Debtors do not have the financial means to pay these rents to their landlords, the Trust Debtors, subject to the Lender's liens.

While the Trust Debtors cannot demonstrate a likelihood of success on the merits or irreparable harm, should the Court consider this factor, the

19

harm to Lender clearly outweighs any harm to the Trust Debtors. Thus the balance of harms weighs in favor of vacating or modifying the stay.

### E.     Public Interest

The Bankruptcy Court found that the public interest is "a neutral factor, not weighing in favor of either party." Ex. N at 6:1-2. But a stay is not in the public interest because the residents of the personal care homes are being negatively impacted by the Debtors' continued operation of these facilities. The Debtors' operations are financially troubled, resulting in property damage being left unrepaired and vendors not being paid. *See* Ex. O; Ex. P; Ex. S. Lender is prepared to bring in a qualified operator to run the personal care homes safely and with little to no disruption to the residents. *See* Apr. 1, 2026 Tr., at 199:6-200:24, 203:19-205:5 (Exhibit T). The Debtors could cooperate in a transition to make this process go smoothly. If the Debtors choose not to cooperate in this transition, then it is in the public interest for the Foreclosure Actions to proceed. *See id.* at 57:8-11.

### F.     Bond Amount

In the alternative, if the Court does not vacate the stay, the Court should condition the effectiveness of any stay on the Trust Debtors' posting a bond or other security sufficient to protect the value of Lender's collateral against the possibility of diminution during the pendency of these appeals. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007) ("In

determining whether a bond should be ordered, the court looks to whether the bond would be necessary to protect 'against diminution in the value of property pending appeal' and to 'secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal.'") (quotation omitted). The Bankruptcy Court declined to require a bond, finding that there was not sufficient evidence of diminution in the value of the properties. That conclusion was plainly wrong.

As Lender's witnesses testified during the hearing, a bond is required because the Debtors' financial insolvency means they will be unable to pay to address large maintenance or equipment failures at the properties. Ex. T at 192:25-194:20. These equipment problems would persist, which would diminish the value of the properties. There is also a concern that the Debtors will remove fixtures from the properties during the stay, leaving Lender with a shell property. Accordingly, Lender requests that the Court require a bond be posted which includes a fund to address any maintenance and equipment problems that may arise during the appellate process. The Whitehall property is licensed for 130 beds and the Saucon property is licensed for 201 beds. *See* Ex. T at 98:1-16. Requiring a $350 deposit per unit per year for repairs and maintenance, Whitehall would be required to deposit $45,500.00 and Saucon would be required to deposit $70,350.00 for

21

purposes of protecting Lender against any maintenance and equipment problems that may arise during these appeals.

Lender also requests that the bond cover the amount of: (1) one year of rents, *see* (Ex. C, Whitehall Manor Lease: $1,668,000; Ex. D, Saucon Manor Lease: $1,705,421) and mortgage payments that will be incurred during these appeals but that likely will not be paid; (2) the Trust Debtors' unpaid real estate taxes ($606,969.09), *see* (Ex. E, Whitehall Trust, Claim No. 1 filed Feb. 3, 2026 by Borough of Hellertown for $94,600.00; (Ex. F, Whitehall Trust, Claim No. 6, filed Feb. 23, 2026 by Whitehall-Coplay School District for $257,618.54; (Ex. G, Saucon Trust, Claim No. 3 filed Feb. 23, 2026 by Saucon Valley School District for $220,654.35; (Ex. H, Whitehall Trust, Claim No. 5 filed Feb. 23, 2026 by Whitehall Township for $34,096.20; and (3) the amounts of the claims for the Whitehall Manor loan ($14,616,161.88) (Ex U, Whitehall Manor, Inc., Claim No. 13 filed Mar. 24, 2026 by Lehigh Valley 1, LLC) and the Saucon Valley Manor Loan ($18,248,932.90) (Ex. V, Saucon Valley Manor, Inc., Claim No. 7 filed Mar. 24, 2026 by Lehigh Valley 1, LLC).

## IV.   CONCLUSION

For the foregoing reasons, Appellee Lehigh Valley 1, LLC respectfully requests that this Court enter an order either (1) vacating the stay pending the Trust Debtors' appeal of the Dismissal Order; or (2) modifying the stay

22

to make it conditional on the Debtors' payment of a bond or other security sufficient to protect the value of Lender's collateral and interests during the pendency of these appeals.

|  |  |
|---|---|
|  | HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER |
| Dated: April 14, 2026 | By: */s/ Matthew A. Hamermesh*<br>Matthew A. Hamermesh<br>Sara E. Smith<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103-6933<br>(215) 568-6200<br>mhamermesh@hangley.com<br>ssmith@hangley.com |

*-and-*

BERGER LAW GROUP, P.C.
Phillip D. Berger
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0800
Berger@BergerLawPC.com

*Attorneys for Secured Creditor Lehigh Valley 1, LLC*

23

## CERTIFICATE OF COMPLIANCE

I, Matthew A. Hamermesh, hereby certify on April 14, 2026, pursuant to Federal Rules of Bankruptcy 8013(f)(3)(A) and 8015(h), that the foregoing Motion to Vacate or Modify the Stay Pending Appeal does not exceed 5,200 words.

*/s/ Matthew A. Hamermesh*
Matthew A. Hamermesh

**CERTIFICATE OF SERVICE**

I, Matthew A. Hamermesh, hereby certify that on April 14, 2026, I caused the foregoing Motion to Vacate or Modify the Stay Pending Appeal to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Matthew A. Hamermesh*
Matthew A. Hamermesh